## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA MCCRAY, | ) | |
| | ) | Case No. 2:24-cv-01364-KT |
| *Plaintiff*, | ) | |
| | ) | Magistrate Judge Kezia O. L. Taylor |
| v. | ) | |
| | ) | |
| HOUSING AUTHORITY CITY OF | ) | |
| PITTSBURGH, *et al.*, | ) | ECF No. 27 |
| | ) | |
| *Defendants*. | ) | |

### MEMORANDUM OPINION[1]

Pending before the Court is Defendants' Motion to Dismiss.  ECF No. 27.  For the reasons that follow, Defendants' motion will be granted; however, as Plaintiff will be afforded one final opportunity to amend her complaint, limited to her federal claims of discrimination and retaliation arising from her second EEOC charge of discrimination, and her state law claim of defamation, as described herein, those claims will be dismissed without prejudice.  All other claims will be dismissed with prejudice.

### I.    PROCEDURAL BACKGROUND

Barbara McCray ("Plaintiff") initiated the instant *pro se* employment rights action on September 27, 2024, with the filing of a Motion for Leave to Proceed *in forma pauperis* and a Complaint.  ECF Nos. 1, 1-3.  The motion was granted by Order entered on October 11, 2024, *see* ECF No. 2, and the Complaint was docketed that same day, *see* ECF No. 3.  Defendants waived service, *see* ECF Nos. 8-11, and filed a Motion to Dismiss and Brief in Support.  ECF Nos. 19-20.

---

[1]   In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case.  ECF Nos. 13-16, 30, 33.  Therefore, the undersigned has the authority to decide dispositive motions and enter final judgment.

Rather than respond to the motion, Plaintiff filed an Amended Complaint on February 24, 2025. *See* ECF No. 23.  Thereafter, on March 10, 2025, Defendants again filed a Motion to Dismiss and Brief in Support.[2]  ECF Nos. 27-28.  Plaintiff has responded to the motion, ECF No. 39, and Defendants have filed a reply, ECF No. 43.  Accordingly, the motion is ripe for consideration.[3]

## II.  FACTUAL BACKGROUND

Plaintiff entered into an employment contract with Defendant Housing Authority City of Pittsburgh ("HACP") on April 12, 2012.  ECF No. 23 ¶ I.4.  In April of 2022, Plaintiff requested and apparently received a "reasonable accommodation to work from home due to a disability."  *Id.* ¶¶ I.5-I.6.  *See also* ECF No. 3-2.  Plaintiff alleges that complaints of discrimination and harassment she made against her supervisor, Defendant Hammond, were ignored and resulted in the termination of her disability accommodation by HACP's Human Resources Labor Relations Officer, Defendant Wiles, on or about September 8, 2023.  *Id.* ¶¶ I.16-I.17.  As a result of the loss of her accommodation as well as an injury sustained during a fire drill at her workplace, Plaintiff used sick leave or Family and Medical Leave Act ("FMLA") leave for most of the remainder of 2023 and 2024.  *Id.* ¶ I.19; ECF Nos. 3-5–3-9.

In November of 2022, Plaintiff was requested by Defendant Hammond to "help process the caseload of a former employee;" however, of the list of 80 cases provided to Plaintiff, only five of the cases had been assigned to the former employee.  ECF No. 23 ¶ I.8.  Plaintiff processed only

---

[2]  The prior motion was dismissed as moot.  ECF No. 25.

[3]  Defendant Binion, who was added by the Amended Complaint and waived service after the present motion was filed, had his Motion for Joinder as to Motion to Dismiss and Brief in Support thereof granted.  *See* ECF Nos. 40-41.  Accordingly, all Defendants seek dismissal of the Amended Complaint.

the five cases that had been assigned to the former employee, and so advised Defendant Hammond. *Id.* ¶ I.9. "[W]hen the Plaintiff didn't process all 80 cases, the Defendant started retaliating against the Plaintiff." *Id.*

From December 2, 2022 to October of 2023, Plaintiff alleges that she was subjected to a number of disciplinary actions by Defendant Hammond, "which were mostly coupled with false allegations or double standards, when no other employee holding the same job title as the Plaintiff was being reprimanded." *Id.* ¶ I.10. This culminated in a meeting with Defendant Wiles, on October 24, 2023, involving an Employee Write-Up issued by Defendant Hammond that "raised 79 allegations against Plaintiff" involving "issues of unanswered emails and phone calls, interim and annual recertifications, and inspection notifications, all of which were not the Plaintiff's responsibilities." *Id.* ¶ I.20. Plaintiff further alleges that Defendant Hammond "discriminated against the Plaintiff by assigning her more work than other employees holding the same job title," *id.* ¶ I.11, and that she was held accountable for her job performance while others in the same classification were not, *id.* ¶¶ I.11-I.15, I.21.

Plaintiff alleges that she reported issues of discrimination, harassment and retaliation by Defendant Hammond to Defendant Wiles, and he failed to protect Plaintiff from such actions. *Id.* ¶ I.23. Plaintiff also alleges that HACP's Executive Director, Defendant Binion, "failed to take appropriate action to provide a safe, fair and productive workplace environment." *Id.* Accordingly, Plaintiff asserts claims of discrimination under the ADA and Title VII (Count I), retaliation (Count II), discriminatory workplace harassment under the ADA and Title VII (Count III) and defamation (Count IV). Plaintiff also includes claims designated as "Financial Hardship, Emotional and Physical Distress" (Count V) and Counsel Fees and Expenses (Count VI).

Prior to filing her Complaint, Plaintiff filed two Charges of Discrimination with the EEOC. The first, signed on December 14, 2023, was assigned EEOC Case No. 533-2023-01546, and alleged discrimination based on Disability and National Origin, and Retaliation, citing the following particulars:

1. I began my employment with Housing Authority Cit[y] of Pittsburgh on April 12, 2021 as a housing specialist. In July of 2022 I had a disability, so I requested an accommodation to work from home. When I got the accommodation, I was treated differently. I sent a letter to Mr. Caster Binion, about the harassment I faced because Brandon was not responding to my emails. In November or December of 2022 I was asked to help with Shatae's workload, and I only said OK so I could get overtime. That is when I realized the others had such a light workload compared to myself and a co-worker. We are the only two immigrants. While I have a write up for tenant's complaining about the turnover, I also have emails from tenant's that praise my work. Additionally, I recently received a final written warning.

2. When I complained to the Respondent, they did not respond to my concerns.

3. I believe that I was discriminated against due to my national origin (Zambian), and disability, in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008, with respect to harassment, retaliation, and reasonable accommodation.

ECF No. 27-1 at 4-5.

On April 17, 2024, the EEOC issued a Determination and Notice of Rights on this Charge of Discrimination. ECF No. 27-1 at 7-8. Thereafter, on or about May 14, 2024, Plaintiff filed a Second Charge of Discrimination, which was assigned EEOC Case No. 533-2024-01771. This charge alleged discrimination based on Color, Disability, National Origin and Race, and Retaliation, and contained the following particulars:

1. I began my employment with Housing Authority City of Pittsburgh on April 12, 2021, HCV Housing Specialist. I am under the supervision of James Morris, HVC Manager. On November 15, 2023, I was injured at work. I fell into an employee in front of me while evacuating the premises during an emergency fire drill. I suffered a medical issue. I was taken to the Emergency Room. I applied for worker's compensation. In December 2023, I was denied the benefits. This claim is pending through the Court. On November 29, 2023, the respondent contacted me and asked if I was working that day. I said no. I was asked to provide a doctor's excuse, which I did. From November 16, 2023, until December 11, 2023, I was off work on sick and personal leave undergoing supervised medical treatment. From December 11, 2023, until January 22, 2024, I was off work on FMLA, undergoing supervised medical treatment. An African American female, HCV Specialist, was on FMLA disability leave and returned to work. She was not treated as harshly as I. An African American female, Inspections Department, was involved in a motor car accident. She was provided with worker's compensation documentation to fill out immediately and the procedure started. I had to fight for the worker's documentation which was finally released to me on December 4, 2023. On December 14, 2023, I filed a charge (533-2023-01546) of discrimination with the U.S. Equal Employment Opportunity Commission. On April 17, 2024, I was issued a Notice of Right to Sue. On March 12, 2024, I was placed on FMLA leave until the respondent reviews my case on December 28, 2024, to undergo supervised medical treatment.

2. No reasonable explanation has been provided for Respondent's actions.

3. I believe that I have been discriminated against because of my race, black, national origin, Zambian, color, and retaliated against for filing a previous charge (533-2023-01546) of discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and my disabilities and retaliated against for filing a previous charge (533-2023-01546) of discrimination in violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008.

ECF Nos. 3-1 at 2-3; 27-1 at 12-13.

### III.    LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). In deciding a Rule 12(b)(6) motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint and views them in a light most favorable to the plaintiff. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002). The "court[ ] generally consider[s] only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim" when considering a motion to dismiss. *Lum v. Bank of Am.*, 361 F.3d 217, 222 n. 3 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; rather, the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Furthermore, a complaint should only be dismissed pursuant to Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).

### IV.    DISCUSSION

#### A.  COUNT I—DISCRIMINATION UNDER THE ADA AND TITLE VII

Several rules and provisions constrain a plaintiff's ability to pursue claims of discrimination and retaliation under various civil and employee rights statutes. First, as

6

Defendants have argued, *see* ECF No. 28 at 20-22, under prevailing Third Circuit precedent, claims under the ADA and Title VII cannot be advanced against individual defendants as individual liability likely does not exist under Title VII or the ADA. *See Sheridan v. E.I. Dupont de Nemors & Company*, 100 F.3d 1061, 1078 (3d Cir. 1996) ("we are persuaded that Congress did not intend to hold individual employees liable under Title VII"); *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996) ("[f]or the reasons previously given by the court in *Sheridan* and other courts of appeals, individual employees cannot be held liable under Title VII"); *Emerson v. Thiel College*, 296 F.3d 184, 189 (3d Cir. 2002) (individuals are not subject to liability under Titles I or II of the ADA); *Koslow v. Commonwealth of Pennsylvania*, 30 F.3d 161, 178 (3d Cir. 2002) (noting that "there appears to be no individual liability for damages under Title I of the ADA"). *See also Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 299 & n.27 (3d Cir. 2017) (noting that Title VII and ADA claims are intended to impose liability on employers, not individuals); *N'Jai v. Floyd*, 386 F. App'x 141, 144 (3d Cir. 2010) (affirming dismissal of discrimination claims against individual employees because individual liability found not to exist under, *inter alia*, Title VII and the ADA).

District courts in this Circuit have uniformly followed this approach. *See Miller v. Rutherford*, No. 24-CV-1506, 2024 WL 4583527, at *4 (M.D. Pa. Oct. 25, 2024) ("Nearly all of the Third Circuit's decisions regarding personal liability under the majority of ADA's titles point toward the absence of individual liability") (citing cases); *MacDougall v. Rhuling*, No. 24-CV-989, 2024 WL 3993213, at *5 (E.D. Pa. Aug. 28, 2024) (finding "[a]s an initial matter, Title VII and the ADA do not provide a cause of action against individual employees, as opposed to the employer") (citing cases); *Brown v. Saint Vincent Health Ctr.*, No. 21-CV-123, 2022 WL 865818,

at *2 (W.D. Pa. Mar. 23, 2022) (agreeing that "individual liability does not exist under Title VII, the ADA, and the ADEA") (citing cases).  Accordingly, Plaintiff's ADA and Title VII claims against Defendants Hammond, Wiles, Binion and Brown are not cognizable and will be dismissed with prejudice, as amendment would be futile.

Next, a plaintiff alleging employment discrimination through the ADA or Title VII may not file suit without first having exhausted administrative remedies through the EEOC.[4]  *Burgh v. Borough Council of Montrose*, 251 F.3d 465, 470 (3rd Cir. 2001) ("Under Title VII, a charge of race discrimination in employment must be filed with the EEOC within 180 days of the occurrence of the alleged unlawful employment practice") (citing 42 U.S.C. § 2000e–5(e)(1)).  Title I of the ADA incorporates the administrative procedures of Title VII of the Civil Rights Act of 1964.  *See* 42 U.S.C. § 12117; *Churchill v. Star Enters.*, 183 F.3d 184, 190 (3d Cir. 1999).  Thus, a plaintiff alleging an ADA Title I violation or a Title VII violation must first exhaust administrative remedies before filing an action in court.[5]  *See* 42 U.S.C. §§ 2000e-5(e), (f)(1); *Buck v. Hampton Twp. Sch.*

---

[4]  When a plaintiff timely files a charge with either the EEOC or the Pennsylvania Human Relations Commission ("PHRC") and requests dual filing, the charge is deemed filed with both agencies under a worksharing agreement between the EEOC and PHRC.  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997) ("[T]he PHRC and the EEOC have entered into an agreement through which they have apportioned initial jurisdiction over discrimination complaints in order to avoid unnecessary duplication of investigatory time and effort.").  "Courts in this Circuit interpreting the worksharing arrangement have held that where a plaintiff timely files a complaint with one agency, either the EEOC or the PHRC, coupled with a request for dual filing, then the complaint is deemed filed with both agencies as of that date."  *Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh*, No. 09-CV-1548, 2010 WL 4668469, at *5 (W.D. Pa. Nov. 9, 2010).  Here, however, Plaintiff did not avail herself of this option.

[5]  This administrative filing serves to "define the scope of the [EEOC]'s investigation and to notify the defendant of the charges against it."  *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 415 (3d Cir. 2010).  Such filing also allows "the EEOC the opportunity to settle disputes through

*Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (applying Title VII procedural requirements to an ADA discrimination claim).  Such exhaustion is accomplished by filing an administrative complaint with the EEOC within 180 days of the challenged employment action.  *Burgh*, 251 F.3d at 470.[6]

A timely filed administrative complaint can, in turn, yield a right to sue notice; any complaint thereafter filed pursuant to such notice must also be timely.  A party has 90 days after notice of the right to sue letter to bring a private action.  *See Cardenas v. Massey*, 269 F.3d 251, 255 (3d Cir. 2001) (citing 42 U.S.C. § 2000e–5(f)(1)).  The 90-day time period is treated as a statute of limitations.  *Burgh*, 251 F.3d at 472  (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982)).  As such, it "is subject to waiver, estoppel, and equitable tolling."  *Zipes*, 455 U.S. at 393.

Finally, the claims presented to the court must have been included within the scope of the administrative charge filed with the EEOC because "[t]he parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination."  *Atkinson v. LaFayette Coll.*, 460 F.3d 447, 453 (3d Cir. 2006).  Thus, a plaintiff may only bring claims "that are within the scope of the initial administrative charge" to the EEOC.  *Barzanty v. Verizon PA, Inc.*, 361 F. App'x 411, 414 (3d Cir. 2010) (citing *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996)).

---

conference, conciliation, and persuasion, avoiding unnecessary action in court."  *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir. 1996).

[6]  In a "deferral state," like Pennsylvania, the 180-day EEOC time limit is increased to 300 days when the claimant first or simultaneously institutes proceedings with the governing state or local agency: here, the Pennsylvania Human Relations Commission.  42 U.S.C. § 2000e-5(e)(1).  Again, Plaintiff did not dual file her administrative charge.

To determine if a claim is administratively exhausted, the court must look at whether the claims are "fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir. 2013) (quoting *Antol*, 82 F.3d at 1295. *See also Barzanty*, 361 F. App'x at 414; *Kopko v. Lehigh Valley Health Network*, 776 F. App'x 768, 773 (3d Cir. 2019). In other words, the Court must determine whether the claims presented in the judicial complaint are "reasonably related to those in the administrative charge," by deciding whether there is a "close nexus between the facts" in the administrative charge and those in the judicial complaint. *Kopko*, 776 F. App'x at 773. *See also Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 967 (3d Cir. 1978).

Accordingly, "[w]here facts alleged in a complaint fall outside the core grievance addressed in the EEOC charge, the new claim is distinct and has not been administratively exhausted." *Gardner v. SEPTA*, 824 F. App'x 100, 105 (3d Cir. 2020) (citing *Antol*, 82 F.3d at 1295-96). Consequently, the ensuing lawsuit is "limited to claims that are within the scope of the initial administrative charge." *Twillie v. Erie Sch. Dist.*, 575 F. App'x 28, 31 (3d Cir. 2014).[7]

### 1. First Charge of Discrimination

Initially, Plaintiff purports to bring her ADA claims pursuant to both Title I and Title II of this Act. ECF No. 23 at 1. Title I of the ADA specifically prohibits discrimination with respect to employment, *see* 42 U.S.C. § 12112(a), while Title II addresses nondiscrimination in the provision of services, programs or activities by State and local governments, *see* 42 U.S.C. §

---

[7] An EEOC charge must be construed liberally, especially when the charge is drafted by a *pro* se plaintiff. *See Hicks v. ABT Assoc., Inc.*, 572 F.2d 960, 965 (3d Cir. 1978) (citing *Tillman v. City of Boaz*, 548 F.2d 592, 594 (5th Cir. 1977)).

12132. "Although the United States Court of Appeals for the Third Circuit has not decided whether a plaintiff can raise an employment claim under Title II, the overwhelming weight of authority from district courts in the Third Circuit holds that Title II 'does not apply to employment claims.'" *Kunsak v. Wetzel*, No. 15-CV-1648, 2016 WL 6601574, at *7 (W.D. Pa. Nov. 7, 2016) (citing and quoting *Cook v. City of Philadelphia*, 94 F. Supp. 3d 640, 648 (E.D. Pa. 2015) (collecting cases)). *See also Hess v. Twp. of Saint Thomas*, No. 23-CV-544, 2024 WL 1333371, at *3 (M.D. Pa. Mar. 28, 2024) (observing that neither the United States Supreme Court nor the Third Circuit has yet "directly addressed whether Title II of the ADA authorizes a claim for employment discrimination claim as Title I does"). Thus, any claim ostensibly brought under Title II of the ADA will be dismissed with prejudice, as amendment would be futile.

Regarding her Title I claim, Plaintiff alleges that an accommodation allowing her to work remotely was rescinded by her employer on September 8, 2023. ECF No. 23 ¶ 17. Plaintiff did not directly raise any claim related to the removal of her accommodation in either Charge of Discrimination she submitted to the EEOC. Having reviewed both Charges of Discrimination, the Court concludes that – if at all – Plaintiff's claim regarding the termination of her disability accommodation could only be considered in the context of her First Charge of Discrimination. Indeed, the Second Charge never references the accommodation and only mentions the ADA in connection with claims of retaliation for filing the First Charge. *See* ECF No. 27-1 at 13 ("I believe I have been . . . retaliated against for filing a previous charge (533-2023-01546) of discrimination in violation of the Americans with Disabilities Act of 1990, as amended by the Americans with Disabilities Act Amendments Act of 2008").

Yet, even if such a claim fell within the scope of the First Charge, Plaintiff did not timely bring this claim before this Court. A plaintiff filing a civil action under ADA Title I or Title VII must file suit within ninety days of receiving a right-to-sue letter from the EEOC. *Cardenas*, 269 F.3d at 255 ("after receiving a right to sue letter, a plaintiff has ninety days to file her complaint in district court") (citing 42 U.S.C. § 2000e–5(f)(1)). *See Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) ("Section 2000e–5(f)(1) requires that claims brought under Title VII be filed within ninety days of the claimant's receipt of the EEOC right to sue letter").

The Third Circuit has "construed this provision to mean that the time for the filing of a complaint begins to run when the plaintiff has notice of the EEOC's decision, which usually occurs on the date he receives a right-to-sue letter from the agency." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999); *see also Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 108 (3d Cir. 2003) ("[T]he statute is clear that a dismissal by the EEOC followed by notice to the person aggrieved are the two events that together start the statute of limitations period").

The Parties acknowledge that Plaintiff received a right to sue letter issued on April 17, 2024, based on the EEOC's handling of the First Charge of Discrimination. *See* ECF No. 3-1 at 5; ECF No. 27-1 at 7-8. Including the three-day adjustment provided by Fed. R. Civ. P. 6(d),[8] the ninety-day deadline after that date fell on July 19, 2024. Plaintiff's Complaint was docketed in

---

[8] Rule 6(d) of the Federal Rules of Civil Procedure creates a presumption that Plaintiff received the notice from the EEOC three days after its mailing. *See Edwards v. Bay State Milling Co.*, 519 F. App'x 746, 748 (3d Cir. 2013) ("[W]here the actual date of receipt is unknown, courts will presume receipt took place three days after the EEOC mailed it") (citing *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999) (relying on Fed. R. Civ. P. 6(e) to "presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it"). Following amendments to Rule 6, this provision is now included in Fed. R. Civ. P. 6(d).

this Court on September 27, 2024.  ECF No. 1.  Based on this timeline, any claim implicated in Plaintiff's first EEOC Charge would be time barred.  This would include the alleged revocation of her disability accommodation.

As set forth above, Plaintiff's first EEOC Charge of Discrimination alleged that she was "treated differently" after receiving a disability accommodation to work from home, and that she was subsequently asked to help with another employee's workload, whereupon she "realized the others had such a light workload compared to [her]self" and another employee who was also – like Plaintiff – an immigrant.  ECF No. 27-1 at 4.  However, Plaintiff is unable to pursue these claims and any claims that might reasonably flow from the ensuing EEOC investigation – such as, conceivably, the removal of her accommodation – because she failed to file a timely complaint after receiving her right to sue letter related to this charge.   Accordingly, all claims that are derivative of Plaintiff's First Charge of Discrimination are dismissed with prejudice as any proposed amendment would be futile.

### 2.  Second Charge of Discrimination

It appears that Plaintiff did timely file the present action related to her Second Charge of Discrimination.  This charge is limited to the allegation that Plaintiff was injured in a workplace accident and not provided with relevant documentation and forms as compared to other employees. ECF No. 27-1 at 12.  Plaintiff also includes information presumably related to her leave usage related to this workplace injury and her subsequent recovery therefrom.  *Id.*

Defendants contend that Plaintiff's claim regarding a workplace injury "must be dismissed because the workers' compensation exclusivity bar precludes Ms. McCray from pursuing such claim in this Court, which are within the sole realm of the workers' compensation remedial

scheme." ECF 28 at 9. Defendants would be correct if Plaintiff were seeking recovery for an alleged workplace injury. *See Gorton v. Air & Liquid Sys. Corp.*, No. 17-CV-1110, 2019 WL 757945, at *7 (M.D. Pa. Feb. 20, 2019) ("[I]f it is apparent from the face of a complaint that a claim would be barred by an exclusivity provision of a workers' compensation law, that claim would be subject to dismissal under Rule 12(b)(6)") (citing *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764 (3d Cir. 2013)).[9]

However, the Court does not view Plaintiff's allegation that she "participated in the fire drill and got injured," ECF No. 23 ¶ I.23, as asserting a discrete tort claim against her employer. Rather, it appears that Plaintiff makes this allegation in support of a claim of discrimination where she alleges that another employee involved in a workplace accident "was immediately referred to the Worker's Compensation clinic and given paperwork to fill out," whereas Plaintiff was not, and that she "had to fight for her to be referred to the Worker's Compensation clinic." *Id.*

Nevertheless, Plaintiff fails to provide any further allegations in her present complaint to explain how this incident fits into her overall claims of discrimination and/or retaliation. Plaintiff has not claimed that the alleged treatment regarding her workplace injury was based on her

---

[9] Indeed,

> Pennsylvania's statutory workers' compensation scheme—unlike those of many other states—provides blanket exclusivity for employers. *See Poyser v. Newman & Co.*, 514 Pa. 32, 522 A.2d 548, 550-51 (1987). Thus, Pennsylvania employers are close to universally immune from tort liability for work-related injuries suffered by their employees. *See id.*; *Barber v. Pittsburgh Corning Corp.*, 521 Pa. 29, 555 A.2d 766, 770-71 (1989).

*Zenith Ins. Co. v. Newell*, 527 F. Supp. 3d 778, 785 (E.D. Pa. 2021), *judgment entered*, No. 20-CV-3878, 2023 WL 8773635 (E.D. Pa. Dec. 19, 2023), *aff'd*, 2024 WL 4986938 (3d Cir. Dec. 5, 2024).

disability, her national origin, some other protected class or some protected activity. Accordingly, any claim related to the treatment by her employer arising from or related to the workplace accident on November 15, 2023, will be dismissed, albeit without prejudice to the filing of an amended complaint.

### B.  COUNT II—RETALIATION

Claims of retaliation brought under Title VII and the ADA are subject to the same rubric. To establish a *prima facie* case of retaliation, a plaintiff must show that (a) she engaged in a protected activity, (b) the employer took materially adverse action against her, and (c) there was a causal connection between the protected activity and the employer's action. *Young v. City of Phila. Police Dept.*, 651 F. App'x 90, 95 (3d Cir. 2016) (citing *Moore v. City of Phila.*, 461 F.3d 331, 340–42 (3d Cir. 2006)) (discussing Title VII retaliation claims); *Soutner v. Penn State Health*, 841 F. App'x 409, 414 (3d Cir. 2021) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500-01 (3d Cir. 1997)) (discussing ADA retaliation claims).

While Plaintiff alleges that she filed a prior Charge of Discrimination with the EEOC and made complaints against her supervisor about purported harassment that could conceivably constitute the necessary protected activity under both Title VII and the ADA, she fails to identify a "materially adverse action" suffered as a result of the alleged retaliation. Indeed, the only such action that might qualify is the cessation of her disability accommodation.[10]  However, as

---

[10]  Clearly, the denial of a requested disability accommodation is an adverse action that can give rise to a retaliation claim under the ADA. *See Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188 (3d Cir. 2010) ("Prohibited discrimination under the ADA includes retaliation against an employee for requesting an accommodation") (citing *Shellenberger v. Summit Bancorp*, 318 F.3d 183, 191 (3d Cir.2003). Thus, the removal of an accommodation, once given, could also qualify. *See Ramrattan v. New York*, No. 22-CV-25, 2025 WL 2549075, at *11 (N.D.N.Y. July 9, 2025),

explained *supra*, any claim connected to the termination of her disability accommodation is time barred. Furthermore, the termination of her disability accommodation occurred prior to the filing of the First Charge. Nevertheless, Plaintiff will be afforded the opportunity to file an amended complaint to include a claim of retaliation based on her Second Charge of Discrimination.

### C. COUNT III—DISCRIMINATORY WORKPLACE HARASSMENT

In order to establish an actionable hostile work environment claim, a plaintiff must plead facts plausibly demonstrating discriminatory conduct that is "so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). *See also Betz v. Temple Health Sys.*, 659 F. App'x 137, 142 (3d Cir. 2016). "Simple teasing, offhanded comments, and isolated incidents (unless extremely serious)" are not sufficiently extreme to amount to a change in the terms of conditions of employment and sustain a hostile work environment claim. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Defendants argue that Plaintiff has failed to exhaust her hostile work environment claim. ECF No. 28 at 15-16. As determined above, any claim raised in Plaintiff's First Charge of Discrimination cannot be brought because Plaintiff did not timely file a complaint after receiving her right to sue notice. With respect to the Second Charge of Discrimination, a claim of hostile work environment does not appear within the Charge itself, nor does it appear that such a claim would fairly fall within the scope of the investigation arising from this Charge.

---

*report and recommendation adopted sub nom. Ramrattan v. Guzman*, 2025 WL 2315310 (N.D.N.Y. Aug. 12, 2025) ("a jury could decide that [the] decision to remove Plaintiff's reasonable accommodations was an adverse action").

Here, the Second Charge addresses – as a claim designated as discrimination – a workplace injury sustained by Plaintiff and her efforts to file a workers' compensation claim, despite impediments imposed by the employer that were potentially motivated by Plaintiff's prior filing of a charge of discrimination.  In contrast, Plaintiff's allegations in support of her hostile work environment claim address interactions with Defendant Hammond that appear directed to the revocation of Plaintiff's disability accommodation in September of 2023, and the failure of Defendants Wiles and Binion to uphold or enforce workplace anti-harassment policies.  *See* ECF No. 23 ¶ III.2 ("The Plaintiff avers that the Defendant Lashawna Hammond designated as the HCV Department Director created a hostile work environment of bullying, intimidation and interference with Plaintiff's work performance"); *id.* ¶ III.3 ("The Plaintiff avers that Defendant, Lashawna Hammond constantly harassed the Plaintiff because of her request and status of being on reasonable accommodation to work from home 4 days a week.  The Defendant used her position of authority to influence the revocation of Plaintiff's reasonable accommodation"); *id.* ¶ III.4 ("Defendant Brandon Wiles, in his capacity as Human Resources Labor officer, failed to uphold workplace policies against harassment"); *id.* ¶ III.4 ("The Plaintiff avers that Caster Binion, acting in his capacity as Executive Director failed to take steps to ensure that the anti-harassment policy is followed consistently, and that the complaint process is working because there was no change in the conduct of the harassers").

While these allegations may comport with the First Charge, they fail to connect to the claims articulated in the Second Charge.  There is no close factual nexus between the allegations in the Second Charge directed to the workplace injury in November of 2023, and those presented in Plaintiff's amended complaint related to the loss of her disability accommodation in September

of 2023.  Indeed, upon a fair reading of both documents, there appears to be no connection or correlation between the two.  *See Barzanty*, 361 F. App'x 411, 414 (3d Cir. 2010) (plaintiff failed to exhaust administrative remedies as to hostile work environment claim because there was no "analogous language in the Charge from which "could give rise to a hostile work environment claim").  *See also Weaver v. Shasta Servs., LLC*, No. 25-CV-910, 2025 WL 2977874, at *4 (W.D. Pa. Oct. 22, 2025) ("Plaintiff's EEOC Charge contains no allegations related to a hostile work environment claim such that Defendant would have been put on notice of such violations, nor that the EEOC would have investigated further into any hostile work environment claims"); *Smith v. Presidio Networked Sols., Inc.*, No. 22-CV-736, 2024 WL 3203314, at *11 (E.D. Pa. June 26, 2024), *reconsideration denied sub nom. Smith v. Presidio Networked Sols., LLC*, 2024 WL 3433305 (E.D. Pa. July 16, 2024) ("Because there is no mention at all of the acts supporting the hostile work environment claim, Plaintiff failed to administratively exhaust her administrative remedies on this Title VII claim, and it will be dismissed").  Accordingly, Plaintiff's hostile work environment claim is dismissed, such dismissal being with prejudice as amendment would be futile.

### D.  COUNT IV—DEFAMATION OF CHARACTER

Plaintiff next asserts a claim for defamation of character, claiming that "false statements made by Defendant LASHAWANA HAMMOND have ruined the Plaintiff's reputation and career with the organization."  ECF No. 23 at 5.  Defendants respond that Plaintiff "does not provide any information about the allegedly defamatory statements, such as what was said, when it was said, or to whom it was said."  ECF No. 28 at 23.  Additionally, Defendants contend that "Pennsylvania courts have adopted a conditional privilege in cases involving communications between coworkers

relating to termination or disciplinary matters of a particular employee" such that Plaintiff "must establish that HACP abused the conditional privilege to assert a viable defamation claim." *Id.* (citing cases).

To state a claim for defamation under Pennsylvania law, a plaintiff must allege the following elements: (1) the defamatory nature of a communication; (2) its publication by defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion. *See* 42 Pa. C.S. § 8343(a). *See also Balletta v. Spadoni*, 47 A.3d 183, 196-97 (Pa. Cmwlth. 2012); *Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014).

Given the paucity of Plaintiff's allegations, her defamation claim is deficient and, thus, not plausible. Critically, she does not allege any facts regarding publication of the alleged defamatory statements, including to whom they were made. *See Suppan v. Kratzer*, 660 A.2d 226, 229 (Pa. Cmwlth. 1995) (where plaintiff "does not allege to whom the allegedly defamatory statement was published, he has not properly alleged defamation. An allegation which merely avers that the alleged defamatory statement was published to a third person is defective"); *Martin v. Impact Health*, No. 23-4447, 2024 WL 3512069, at *4 (E.D. Pa. July 23, 2024) ("To meet the "publication" requirement, Plaintiffs must allege facts that establish that Defendant expressed the defamatory statement to a "third party"—that is, a party other than the plaintiff") (citing *Suppan*, 660 A.2d at 229). Plaintiff also fails to allege that the recipient understood its defamatory meaning and understood it as intended to be applied to Plaintiff. Because Plaintiff has failed to plead the

necessary factual elements, her defamation claim is not plausible.  However, the Court will grant

Plaintiff leave to amend if she can allege additional facts to support this claim.[11]

## E.  COUNT V—FINANCIAL HARDSHIP, EMOTIONAL AND PHYSICAL DISTRESS

At Count V,[12] Plaintiff recounts some of the negative impacts she has suffered because of

the Defendants' actions as alleged in her amended complaint and asks the Court "to award damages

for diminished quality of life resulting from the financial hardship cause by the Defendants."  ECF

No. 23 at 6-7.  However, because damages are typically pled as merely incidental to a cause of

action and not as a separate cause of action in and of themselves, this count will be dismissed.

Nevertheless, while Plaintiff cannot assert a claim for damages as a standalone cause of

action, Plaintiff is not prohibited from seeking damages as a remedy to the extent she can

sufficiently state a claim and damages are available for that claim.  *Cf. Jones v. SWEPI LP*, No.

19-CV-50, 2019 WL 913520, at *3 (W.D. Pa. Feb. 25, 2019) (allowing plaintiff to proceed on

claim for punitive damages listed in a separate count where the requested relief was merely

incidental to a cause of action) (citing and quoting *Smith v. Alien Flier, LLC*, No. 15-CV-1128,

2016 WL 5661747, at *4 (W.D. Pa. Sept. 30, 2016)).

---

[11]  The Court observes that Defendants raise the issue of conditional privilege in further support of dismissal of Plaintiff's defamation claim.  ECF No. 28 at 23-24.  In determining whether sufficient facts exist to support her claim, Plaintiff should also consider whether the statements attributed to Defendant Hammond which purport to be defamatory fall within the identified conditional privilege and whether such statements constitute an abuse of that conditional privilege. *See*, *e.g.*, *Udodi v. Stern*, 438 F. Supp. 3d 293, 303 (E.D. Pa. 2020) ("To survive a motion to dismiss, defamation plaintiffs therefore must plead abuse of a conditional privilege, at least where the potential relevance of a privilege is clear from the complaint") (citing, *inter alia*, 42 Pa. Cons. Stat. § 8343(a)(7) and *Foster v. UPMC S. Side Hosp.*, 2 A.3d 655, 665 (Pa. Super. 2010)).

[12]  While Defendants acknowledge Counts V and VI, they respond – without elaboration – that "[b]oth counts fail alongside Ms. McCray's other deficient counts."  ECF No. 28 at 24 n. 9.

### F.  COUNT VI—COUNSEL FEES AND EXPENSES

Count VI of the Amended Complaint seeks to interpose a claim for attorney's fees and costs as an independent cause of action.  The ADA and Title VII are both fee-shifting statutes that provide for awards thereof to prevailing parties.  *See*, *e.g.*, *Bjorklund v. Philadelphia Hous. Auth.*, 118 F. App'x 624, 626 (3d Cir. 2004) (ADA) ("A prevailing party in a suit brought under the ADA is entitled to recover reasonable attorneys' fees and costs.  42 U.S.C. § 12205")[13]; *Hare v. Potter*, 549 F. Supp. 2d 698, 702 (E.D. Pa. 2008) (Title VII) ("Under Title VII, 'the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee . . . as part of the costs.' 42 U.S.C. § 2000e–5(k)").[14]

Nevertheless, such provisions are not predicates for independent causes of action. Congress through these sections did not confer upon litigants an independent cause of action for attorney's fees; it simply allows the award of "a reasonable attorney's fee" to the "prevailing party" in cases brought under certain federal statutes.  It is not an independent basis for our jurisdiction. *Cf. Carpenter v. Ashby*, 351 F. App'x 684, 687 (3d Cir. 2009) ("Nor does § 1988 provide for a private cause of action") (citing *Moor v. County of Alameda*, 411 U.S. 693, 702 (1973)).

---

[13]  This section provides:  "In any action or administrative proceeding commenced pursuant to this chapter, the court or agency, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee, including litigation expenses, and costs, and the United States shall be liable for the foregoing the same as a private individual."  42 U.S.C. § 12205.

[14]  This section provides:  "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person."  42 U.S.C. § 2000e–5(k).

Indeed, Rule 54(d) provides that "[a] claim for attorney's fees . . . must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A).  Rule 54(d) further provides:

> [u]nless a statute or court order provides otherwise, the motion must: (i) be filed no later than 14 days after the entry of judgment; (ii) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; [and] (iii) state the amount sought or provide a fair estimate.

Fed. R. Civ. P. 54(d)(2)(B)(i)-(iii).

Neither the ADA nor Title VII requires that attorney's fees be proved at trial as an element of damages.  *See* 42 U.S.C. § 12205; 42 U.S.C. § 2000e–5(k).  Instead, both fee-shifting statutes permit the Court, in its discretion, to award reasonable attorney's fees to the prevailing party.  *Id. See Lanni v. New Jersey*, 259 F.3d 146, 148 (3d Cir. 2001) (ADA); *Sullivan v. Commonwealth of Pennsylvania Dept. of Labor and Indus.*, 663 F.2d 443, 452 (3d Cir. 1981) (Title VII).  Thus, Plaintiff's claim for attorney's fees and cost will be dismissed to the extent it is listed as a separate count; however, in the event Plaintiff becomes a prevailing party in this litigation, she may file an appropriate motion under Fed. R. Civ. P. 54.

## V.  <u>CONCLUSION</u>

For the above reasons, Defendants' motion will be granted; however, as Plaintiff will be afforded one final opportunity to amend her complaint, limited to her federal claims of discrimination and retaliation arising from her second EEOC charge of discrimination, and her state law claim of defamation, as described herein, those claims will be dismissed without prejudice.  All other claims will be dismissed with prejudice.

An appropriate Order will follow.


Dated:  November 24, 2025                                    **BY THE COURT**


                                                                  _s/ Kezia O. L. Taylor_____
                                                                  KEZIA O. L. TAYLOR
                                                                  United States Magistrate Judge


cc:     BARBARA MCCRAY
        P.O. Box 4523
        Pittsburgh, PA 15205